DECISION AND JUDGMENT
{¶ 1} Defendant-appellant, Richard Solether, appeals the September 4, 2007 judgment of the Wood County Court of Common Pleas which, following a jury trial *Page 2 
convicting him of rape, sentenced appellant to four years of imprisonment. For the reasons that follow, we affirm the trial court's decision.
 {¶ 2} The relevant facts of this case are as follows. On November 1, 2006, appellant was indicted on one count of rape, in violation of R.C. 2907.02(A)(2). The charge stemmed from an incident on August 21, 2006, where appellant, then a Perrysburg Township Police Officer, met the victim at a Fricker's restaurant in Perrysburg, Wood County, Ohio. The two talked for a few hours and left at closing time. Although the versions of the events differ, it is undisputed that the two ended up at appellant's apartment. According to appellant's trial testimony, he and the victim were kissing and it got "hot and heavy." Appellant admitted to placing his hand in the victim's underpants and digitally penetrating her vagina. Appellant testified that they were engaging in this conduct for approximately ten seconds when the victim stated: "I don't think that we ought to do this." Appellant stated that he immediately leaned back, the victim sat on the couch, and then he turned on the television. After a bit, the victim asked appellant to take her home; appellant drove the victim home.
 {¶ 3} The victim testified that at appellant's apartment they each had a glass of wine. The victim used the restroom, came back in the living room and sat on the couch. The victim stated that she was waiting for appellant to take her home; she assumed that appellant would take her home because she had finished her wine. According to the victim, appellant sat down on the couch and began kissing her neck. The victim testified *Page 3 
that she repeatedly told appellant that she was tired and that she just wanted to go home. The victim testified that she kept inching away from appellant and that he would not get off of her; appellant pushed her underwear down and inserted his finger in her vagina. The victim testified that they eventually wound up on the floor and that appellant abruptly stopped and took her home.
 {¶ 4} Following the presentation of the above testimony, as well as the testimony of the investigating officers, individuals present at Fricker's on the night in question, and individuals from the victim's place of employment, the jury convicted appellant of the sole count in the indictment.
 {¶ 5} On July 24, 2007, appellant filed a motion for a new trial pursuant to Crim. R. 33(A)(1), (2), and (6). Specifically, appellant argued that he was prevented from having a fair trial based upon the impermissible expert testimony of Perrysburg Township Police Officer Robert Gates who testified, inter alia, regarding delayed reporting of sexual assault. Appellant further argued that while the jury was deliberating, the victim was overheard by a juror's boyfriend stating that she had "lied about it." Appellant attached the affidavit of Gilbert Lawson, the boyfriend, to his motion. Appellant also requested a hearing on the motion.
 {¶ 6} In opposition, the state argued that Officer Gates properly testified that, based on his training and experience, it was not uncommon for sexual assault victims not to report the assault immediately. With regard to the newly discovered evidence *Page 4 
allegation, the state attached an affidavit of the victim stating that she did not discuss the trial until the verdict was announced. The state also attached the affidavit of investigator, John Helm, who interviewed Lawson. According to Helm, Lawson indicated that at the time of the alleged statement the victim and her friend were six to ten feet in front of him and that, although he has a hearing impairment, Lawson was not wearing his hearing aids at the time.
 {¶ 7} On August 8, 2007, without conducting a hearing and without explanation, the trial court denied the motion. On September 4, 2007, appellant was sentenced to four years of imprisonment. This appeal followed.
 {¶ 8} Appellant now raises the following six[1] assignments of error for our consideration:
 {¶ 9} "I. The trial court abused its discretion in denying Solether's motion for new trial which presented compelling new evidence that the state's key witness perjured her testimony at trial.
 {¶ 10} "II. The state committed reversible error in failing to produce material exculpatory evidence, in violation of Brady v. Maryland and Due Process, thereby undercutting Solether's ability to effectively cross-examine the expert witness under the Sixth Amendment. *Page 5 
 {¶ 11} "III. The trial court abused its discretion in prohibiting defense counsel from impeaching the complaining witness with evidence of her prior inconsistent conduct.
 {¶ 12} "IV. The trial court committed reversible error in admitting impermissible expert testimony.
 {¶ 13} "V. Although each trial error and the new evidence standing alone warrant a new trial the cumulative effect of the trial errors and the new evidence of Solether's innocence demands a new trial.
 {¶ 14} "VI. Lack of required mens rea in the indictment constitutes a structural deficiency warranting automatic reversal per Colon; the same omission from the jury instructions constitutes plain error perWamsley; if the indictment is not structurally deficient, then it is plain error and also ineffective assistance of counsel for failing to object to indictment and jury instructions."
 {¶ 15} In appellant's first assignment of error he contends that the trial court erred when it denied appellant's motion for a new trial based upon newly discovered evidence. The evidence at issue came from Gilbert Lawson, the boyfriend of a juror who, in a sworn affidavit, stated:
 {¶ 16} "I attended the trial of Richard Solether in the Wood County Common Pleas Court. While the jury was deliberating its verdict, I was outside of the Wood County Courthouse when I overheard a conversation of [the victim]. [The victim] was *Page 6 
talking to another female friend and stated as follows: `I shouldn't have lied about it, but it's too late to change it now.'
 {¶ 17} "After the jury's verdict, I spoke to my girlfriend, Gerda [H.] who was a juror in the case. I told her what I heard, and she became very upset. She insisted that we contact Mr. Solether's attorney, Sheldon Wittenberg."
 {¶ 18} Appellant contends that because appellant's conviction was based principally on the jury's finding that the victim's, rather than the appellant's testimony was more credible, the newly discovered evidence would have had an impact on the outcome of the trial. Conversely, the state argues that the victim's alleged statement cannot be definitively linked to the trial and that Lawson has a hearing impairment and was not wearing hearing aids at the time.
 {¶ 19} In making their arguments, the parties rely on State v.Petro (1947), 148 Ohio St. 505, which provides a six-prong test to be used in deciding whether to grant a motion for a new trial based upon newly discovered evidence. Petro provides:
 {¶ 20} "To warrant the granting of a motion for a new trial in a criminal case, based on the ground of newly discovered evidence, it must be shown that the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the *Page 7 
former evidence. (State v. Lopa, 96 Ohio St. 410, 117 N.E. 319, approved and followed.)" Id. at syllabus.
 {¶ 21} The decision to grant or deny a new trial on grounds of newly discovered evidence is within the sound discretion of the trial court.State v. Hawkins (1993), 66 Ohio St.3d 339, 350; State v. Schiebel
(1990), 55 Ohio St.3d 71, paragraph one of the syllabus. Likewise, the decision to conduct an evidentiary hearing on the motion is within the trial court's discretion. Toledo v. Stuart (1983), 11 Ohio App.3d 292,293. An abuse of discretion exists where the record demonstrates that the trial court's attitude is unreasonable, arbitrary or unconscionable.State v. Montgomery (1991), 61 Ohio St.3d 410, 413; State v. Adams
(1980), 62 Ohio St.2d 151, 157. "The decision to grant a motion for a new trial is an extraordinary measure that should be used only when the evidence presented weighs heavily against the conviction." State v.Samatar, 152 Ohio App.3d 311, 2003-Ohio-1639, ¶ 35, citing State v.Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 22} Applying the Petro test to the present case we agree with the state's assessment that the second (discovered since the trial), third (could not have been discovered until after trial), and fifth (not merely cumulative) prongs have been met. Appellant states that although the newly discovered evidence in this case is impeachment evidence (sixth Petro prong), because the case turns on the credibility of the victim such evidence is material; and, with its admission in a subsequent trial, a reasonable *Page 8 
probability exists that appellant would not have been convicted (firstPetro prong.) In support of his argument, appellant relies, inter alia, on State v. Smith (Dec. 15, 1994), 10th Dist. No. 94APA02-246,People v. Randle (1982), 130 Cal.App.3d 286, and Morgan v. State (Alaska 2006), 139 P.3d. 1272.
 {¶ 23} In State v. Smith, the appellate court reversed the trial court's denial of the appellant's new trial motion. Appellant was granted a new trial because the chronological markers relied upon by the minor accuser and her mother were factually impossible based upon new evidence in the form of school records. In People v. Randle, appellant was granted a new trial based upon newly discovered evidence where the alleged sexual assault victim had a reputation in another city of soliciting sex acts for money, drug use, and dishonesty. The court found that a new trial was warranted because the crux of the case turned on whether the sex act was consensual or resulted from force. Finally inMorgan v. State, the appellant received a new trial after new evidence was discovered that the alleged victim had made a prior false accusation of sexual assault. As in Randle, the issue was whether the sexual conduct was consensual. The Morgan court concluded that the new evidence was important and should be reviewed by the factfinder in determining the credibility of the witnesses.
 {¶ 24} Appellant argues that the above cases stress the need for a jury to asses the credibility of the witnesses in light of the newly discovered evidence. Appellant argues that the need is even more pronounced where the case turns on whether the sexual *Page 9 
conduct was consensual or forced. This court has carefully reviewed the arguments of the parties and the cases cited in support thereof. Upon review, we find that there is a critical difference between the cases relied upon by appellant and the facts of the instant case; the difference is that the victim's alleged statement cannot be considered a recantation or evidence of perjury. Assuming that the victim did make the statement (which she denies by sworn affidavit), there is no evidence that she was referring to her trial testimony. Moreover, if a new trial were to be held it is doubtful that, under the Ohio Rules of Evidence, the alleged statement would be admissible.
 {¶ 25} We further find that the trial court did not abuse its discretion when it failed to conduct a hearing on appellant's new trial motion. The judge reviewed affidavits submitted by the parties and observed the demeanor of the victim during trial. Based on the foregoing, we find that appellant's first assignment of error is not well-taken.
 {¶ 26} In appellant's second assignment of error, he argues that the state, in violation of Brady v. Maryland (1963), 373 U.S. 83, erred when it failed to produce material exculpatory evidence which hindered appellant's ability to effectively cross-examine Officer Robert Gates. Specifically, appellant contends that the state's failure to disclose the victim's polygraph examination results, indicating deception, prejudiced his ability to cross-examine Officer Gates who, according to appellant, "bolstered" the victim's testimony/credibility. *Page 10 
 {¶ 27} In Brady v. Maryland the Supreme Court of the United States held that suppression of material evidence violates a defendant's due process rights. Evidence is "material" where there exists a "reasonable probability" that had the evidence been disclosed at trial the outcome would have been different. United States v. Bagley (1985), 473 U.S. 667,682. Applying Brady to polygraph examination results, the Supreme Court later held that the state's failure to disclose the results of a polygraph examination of a state witness did not deprive the defense of material evidence. Wood v. Bartholomew (1995), 516 U.S. 1. The court reasoned:
 {¶ 28} "The information at issue here, then-the results of a polygraph examination of one of the witnesses-is not `evidence' at all. Disclosure of the polygraph results, then, could have had no direct effect on the outcome of trial, because respondent could have made no mention of them either during argument or while questioning witnesses." Id. at 6.
 {¶ 29} The court discounted the argument that the discovery of the test results could have led to admissible evidence as too speculative. Id. at 6-7.
 {¶ 30} In State v. Souel (1978), 53 Ohio St.2d 123, the Supreme Court of Ohio set forth the criteria for the admissibility of polygraph examination results. Such criterion includes the written stipulation of the parties and is still subject to the discretion of the trial court. Id. at syllabus. In State v. Davis (1991), 62 Ohio St.3d 326, the court addressed the issue of the discoverability of the evidence, rather than its use at trial. *Page 11 
Specifically, the court addressed the issue of "whether the state is required to provide, through discovery, the results of polygraph tests that were performed on persons other than the defendant or any co-defendant(s)." Id. at 341. The court dismissed the appellant's argument that the discovery of the results could have led to additional evidence that could have aided his defense. Id. at 342. The court further explained: "This court has never held that a defendant is entitled to the results of polygraph examinations, nor has this court held that polygraph examinations are scientific tests which are discoverable pursuant to Crim. R. 16." Id. Accord State v. Hairston, 9th Dist. No. 05CA008768, 2006-Ohio-4925.
 {¶ 31} Appellant acknowledges that the victim's polygraph test results were inadmissible to impeach her testimony; however, appellant contends that the test results were admissible to impeach the testimony of Officer Gates who, according to appellant, testified as to the veracity of the victim's statements. Appellant relies primarily on three cases to support his argument that polygraph results can be admissible for other purposes. In Criss v. Springfield Twp. (1990) 56 Ohio St.3d 82, Moss v.Nationwide Mut. Ins. Co. (1985), 24 Ohio App.3d 145, and State v.Manning (1991), 74 Ohio App.3d 19, the courts permitted the introduction of polygraph examination results for various reasons. In Criss, the court held that where polygraph examinations are conducted during a criminal investigation the examination results are admissible to show the state of mind of the police officers who were defending against a claim of malicious prosecution. Id. at 87. *Page 12 
In reaching its decision, the court noted that the concerns in State v.Souel, supra, were not implicated because the polygraph test results were not "being offered for the purpose of corroborating or impeaching testimony at trial." Id. at 86. Next, in Moss, which involved an insured's bad faith claim, the court, first noting that Souel does not control in a civil case setting, permitted the use of the insured's polygraph examination test results to show the basis for the insurer's denial of coverage. Id. at 147-148. Finally, in Manning the court held that polygraph examination results from the deceased victim were admissible to rebut the appellant's self-defense claim.
 {¶ 32} Criss and Moss are immediately distinguishable based upon the fact that the evidence was admitted in a civil, rather than a criminal, trial. Further, the Criss court stressed that the evidence was to be used to establish the officers' state of mind and not to corroborate or impeach trial testimony. In Manning, the court did permit the polygraph testimony of the deceased victim to be admitted during trial. On appeal, the court, citing Criss, held that the testimony was admissible to demonstrate the state of mind of the appellant and to rebut her claim of self-defense. Manning, 74 Ohio App.3d at 25-26. Unlike Manning, appellant argues that the victim's polygraph examination was admissible to impeach Officer Gates' trial testimony. As set forth above, polygraph examination results are not admissible to impeach or corroborate trial testimony.
 {¶ 33} Based on the foregoing, we find that the state did not fail to provide appellant with "material" evidence as set forth in Brady v.Maryland because the victim's *Page 13 
polygraph examination results were inadmissible at trial. Appellant's second assignment of error is not well-taken.
 {¶ 34} In appellant's third assignment of error he contends that the trial court abused its discretion when it prohibited appellant's counsel from impeaching the victim with evidence of her prior inconsistent conduct. Appellant states that during cross-examination, the victim testified that she never tore a piece of paper from a notepad and gave it to appellant with the intention of exchanging telephone numbers after the alleged incident. Appellant's counsel then attempted to introduce the piece of paper (which counsel argued was distinctively shaped with an image of a dog); an objection was made and a discussion about its admissibility ensued.
 {¶ 35} The state argued that the paper was not admissible because defense counsel failed to provide it during discovery. The state further argued that it was inadmissible extrinsic evidence. Following arguments by the parties, the court sustained the state's objection determining that defense counsel failed to provide discovery under Crim. R. 16(C)(1)(a). However, appellant's counsel was permitted to ask additional questions about the paper.
 {¶ 36} Appellant now argues that the paper did not meet the definition of "extrinsic evidence;" alternatively, appellant asserts that assuming the paper was extrinsic evidence, under Evid. R. 613(B)(2) it was admissible as a "fact that is of consequence to the determination of the action." *Page 14 
 {¶ 37} We first note that "[t]he admission or exclusion of relevant evidence rests within the sound discretion of the trial court."State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. This court, therefore, will not reverse a trial court's ruling regarding the admission or exclusion of evidence unless the trial court abused its discretion. An abuse of discretion "connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams, 62 Ohio St.2d at 157.
 {¶ 38} At trial, the court found that appellant failed to provide discovery under Crim. R. 16. Crim. R. 16(C)(1)(a) provides:
 {¶ 39} "(C) Disclosure of evidence by the defendant
 {¶ 40} "(1) Information subject to disclosure.
 {¶ 41} "(a) Documents and tangible objects. If on request or motion the defendant obtains discovery under subsection (B)(1)(c), the court shall, upon motion of the prosecuting attorney order the defendant to permit the prosecuting attorney to inspect and copy or photograph books, papers, documents, photographs, tangible objects, or copies or portions thereof, available to or within the possession, custody or control of the defendant and which the defendant intends to introduce in evidence at the trial."
 {¶ 42} In addition, Crim. R. 16(E)(3) gives the trial court broad discretion in determining what sanction, if any, to impose for a discovery violation. The rule provides: *Page 15 
 {¶ 43} "Failure to comply. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances."
 {¶ 44} Thus, according to Crim. R. 16, defense counsel was required to provide any papers that he intended to introduce into evidence at trial. This court addressed a similar issue in State v. Hemsley, 6th Dist. No. WM-02-010, 2003-Ohio-5192. In Hemsley, the defendant objected to the state's use of an IRS form for impeachment purposes; the defendant argued that the form had not been provided in discovery. Affirming the trial court's admission of the document we stated: "[T]he IRS form was used only after Hemsley testified that he had not gambled. Use of this document was not a foregone conclusion and depended upon Hemsley testifying about his gambling. We find this is sufficiently remote so that the state was not required to provide the document to Hemsley." Id. at ¶ 18. However, the court also stressed that its holding was based on the fact that the IRS document was not material to the elements of theft and was used solely to impeach Hemsley. Id. at ¶ 20.
 {¶ 45} In the present case, appellant sought to impeach the victim with a piece of paper she allegedly wished to use to write her telephone number on. The paper's purpose *Page 16 
would be to demonstrate that the victim, despite the alleged attack, still wished to have contact with appellant. As indicated by the state, this evidence implicates the force element of rape. Upon review, we find that the court did not abuse its discretion when it found a discovery violation and prevented the use of the paper. We also find that appellant was not prejudiced by its exclusion. First, the paper was blank. The probative value of the paper had the victim, in fact, written her telephone number on it would have been much greater. Next, appellant was permitted to ask the victim additional questions about the paper and the alleged desire to exchange telephone numbers. Because we find that the trial court did not err in excluding the evidence due to a discovery violation, we need not address appellant's argument relative to Evid. R. 613(B)(2). Appellant's third assignment of error is not well-taken.
 {¶ 46} Appellant, in his fourth assignment of error, argues that the trial court erred by permitting the state's witness, Officer Robert Gates, to offer expert testimony regarding delayed reporting by rape victims. Conversely, the state asserts that Officer Gates was not offering "expert" testimony; rather, his testimony was based on personal experience. The state further argues that even assuming that the testimony was expert in nature, it was still admissible under Evid. R. 702.
 {¶ 47} The history of this assignment of error is as follows. Prior to the trial in this matter, appellant filed a motion in limine to prevent the state from presenting expert testimony from John Helm, of the Wood County Prosecutor's Office, regarding delayed *Page 17 
reporting by rape victims. (Helm was disclosed by the state as an expert witness.) Appellant alleged that Helm's knowledge was not "based on reliable scientific, technical, or specialized information" as required under Evid. R. 702(C). The motion was preliminarily overruled. Appellant further complains that although the state did not call Helm to testify, it failed to disclose Officer Gates as an expert in delayed reporting.
 {¶ 48} Officer Gates testified that he had been a detective since 1999, and had conducted approximately 150 to 200 sexual assault investigations. Gates testified that in addition to his sexual assault experience, he also "attended a couple of schools several years ago." Thereafter, the following exchange took place:
 {¶ 49} "Q: Based upon your training and experience is it unusual for a victim of sexual assault not to report the assault immediately?
 {¶ 50} "A: No, that's not unusual."
 {¶ 51} Appellant's counsel then objected; he argued that a proper foundation had not been laid. The objection was overruled. The questioning continued as follows:
 {¶ 52} "Q: Again based upon your training and experience what are some of the reasons that victims of sexual assaults may not report immediately?
 {¶ 53} "A: It can be a number of reasons. It could be fear of the offender. It could be fear that they would have to go through with the offense again several times in front of strangers. It might be fear that nothing could be done by the system that the case wouldn't be strong enough for example. Could be a number of reasons. *Page 18 
 {¶ 54} "* * *. It might be that the offender would be a well known or powerful person that maybe because of that, they might not be believed.
 {¶ 55} "Q: Based upon your training and experience if the offender was a police officer would that be a reason for a victim not to report a sexual assault?
 {¶ 56} "A: Yes, I think so."
 {¶ 57} Gates proceeded to testify about the origin of the investigation which resulted from the victim's employer speaking with a Woody County Deputy Sheriff who then contacted the Perrysburg Township Police Department. Gates testified that he contacted the employer who gave him the victim's telephone number. Gates then met with the victim and took her statement.
 {¶ 58} At the conclusion of Gates' direct examination appellant's counsel stated:
 {¶ 59} "I move to strike all the opinion evidence given by this Detective as to his information as to the lay reporting. He was not qualified as an expert, and he's not permitted to give that expert testimony. I want to show a continuing objection. You overruled my first objection, so I didn't want to keep on interrupting."
 {¶ 60} The court noted that its decision to overrule the objection was based on this court's case captioned State v. Frost, 6th Dist. Nos. L-06-1142, L-06-1143, 2007-Ohio-3469, and the cases cited therein. InFrost, we concluded that a detective's testimony regarding the issues of re-victimization, conditioning, and delayed reporting in child sexual abuse cases was not plain error (the testimony was not objected to during trial.) *Page 19 
Id. at ¶ 42. Our determination was based on the fact that the detective possessed a degree of "specialized knowledge" in the area of child sexual abuse based on training and on-the-job experience which included 21 years as a police officer and six years investigating sex offenses. Id. at ¶ 41-42. We further noted that "defense counsel stipulated to the detective's qualifications in the area of sexual assault and sexual abuse investigation." Id. at ¶ 41.
 {¶ 61} In addressing appellant's assignment of error we must first categorize Officer Gates' testimony as lay opinion or expert testimony. Lay witness opinion testimony is "limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue." Evid. R. 701. Conversely, under Evid. R. 702, a witness may testify as an expert where following applies:
 {¶ 62} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 {¶ 63} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 {¶ 64} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. * * *." *Page 20 
 {¶ 65} Although Officer Gates' testimony about delayed reporting was based largely upon his personal experience, the fact that delayed reporting by sexual assault victims is not uncommon is not within the knowledge of the average juror. Thus, because Gates' testimony required "specialized knowledge" it is properly categorized as expert testimony. We must now determine whether the testimony was admissible under Evid. R. 702.
 {¶ 66} In State v. Hale, 119 Ohio St.3d 118, 2008-Ohio-3426, ¶ 54, the Supreme Court of Ohio noted:
 {¶ 67} "Evid. R. 702(B) provides that a witness may qualify as an expert by reason of his or her specialized knowledge, skill, experience, training, or education. Neither special education nor certification is necessary to confer expert status on a witness. The witness offered as an expert need not have a complete knowledge of the field in question, as long as the knowledge he or she has will aid the trier of fact.State v. Baston (1999), 85 Ohio St.3d 418, 423, 709 N.E.2d 128."
 {¶ 68} The Supreme Court of Ohio has further stated that: "Professional experience and training in a particular field may be sufficient to qualify one as an expert." State v. Mack,73 Ohio St.3d 502, 511, 1995-Ohio-273, citing State v. Beuke (1988), 38 Ohio St.3d 29,43. *Page 21 
 {¶ 69} In the present case, we find that Officer Gates had a sufficient degree of specialized knowledge to testify regarding delayed reporting by sexual assault victims. Appellant's fourth assignment of error is not well-taken.
 {¶ 70} Appellant's fifth assignment of error contends that the cumulative effect of the above errors deprived appellant of a fair trial. We have stated, "although a particular error by itself may not constitute prejudicial error, the cumulative effect of the errors may deprive a defendant of a fair trial and may warrant the reversal of his conviction." State v. Hemsley, 6th Dist. No. WM-02-010, 2003-Ohio-5192, ¶ 32, citing State v. DeMarco (1987), 31 Ohio St.3d 191, paragraph two of the syllabus. "`However, in order even to consider whether `cumulative' error is present, we would first have to find that multiple errors were committed in this case.'" Hemsley, ¶ 32 quoting State v.Madrigal, 87 Ohio St.3d 378, 398, 2000-Ohio-448.
 {¶ 71} Upon review of appellant's preceding four assignments of error, we cannot say that there were multiple instances of harmless error; accordingly, there can be no cumulative error. Appellant's fifth assignment of error is not well-taken.
 {¶ 72} Appellant's sixth and final assignment of error contends that the indictment is structurally deficient or, at minimum is plain error, because it failed to include a mens rea element for the sexual conduct element of the offense of rape. In support of his argument, appellant relies on the Supreme Court of Ohio case captioned State v. Colon,118 Ohio St.3d 26, 2008-Ohio-1624. Conversely, the state argues that there is no mens *Page 22 
rea required for the element of sexual conduct. Alternatively, the state asserts that even assuming that the indictment/jury instructions were defective, the defect does not rise to the level of structural or of plain error.
 {¶ 73} In State v. Colon ("Colon I") the court held that where an indictment for robbery failed to contain the applicable reckless element, the issue is not waived where the defendant fails to raise the defect in the trial court. Id. at syllabus. The Colon I court then determined that the defect was a "structural error" because the defective indictment "permeated" the entire trial. First, there was no evidence that the defendant had notice that the state was required to prove the reckless mental state. Next, the state did not argue that the defendant's conduct was reckless. Finally, the trial court failed to instruct the jury on the reckless element. Id. at ¶ 29-31.
 {¶ 74} On reconsideration, the Supreme Court of Ohio clarified its rulings. State v. Colon, Slip Opinion No. 2008-Ohio-3749. ("ColonII") The court first noted that the Colon I decision was prospective in nature. Id. at ¶ 3. The court then stressed that the facts in theColon I decision were "unique" in that "the defective indictment resulted in several other violations of the defendant's rights." Id. at ¶ 6. Including the fact that during closing arguments the state treated robbery as a strict liability offense. Id. The court then concluded that the structural-error analysis is appropriate only in "rare" cases and that "in most defective indictment cases, the court may analyze the error pursuant to *Page 23 
Crim. R. 52(B) plain-error analysis." Id. at ¶ 8. The court then emphasized that "the syllabus in Colon I is confined to the facts in that case." Id.
 {¶ 75} In the present case, appellant was indicted on one count of rape under R.C. 2907.02(A)(2), which provides that: "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." The indictment at issue stated:
 {¶ 76} "On or about the 21st day of August 2006, at Wood County the defendant, Richard Solether did engage in sexual conduct with Jane Doe and the said Richard Solether purposely compelled Jane Doe to submit by force or threat of force, in violation of the Ohio Revised Code Title 29, Section 2907.02(A)(2), and against the peace and dignity of the State of Ohio."
 {¶ 77} In his assignment of error, appellant argues that the indictment is defective because it failed to include a mens rea for the sexual conduct element. Appellant contends that this error permeated the entire proceedings, including the jury instructions which mirrored the indictment. Conversely, the state argues that there is no mens rea for the sexual conduct element. Alternatively, the state contends that even assuming the indictment was defective, it did not rise to the level of plain error.
 {¶ 78} At the conclusion of the trial, the court instructed the jury on the definition of rape, the court stated: *Page 24 
 {¶ 79} "Before you can find the defendant guilty, you must find beyond a reasonable doubt that the offense happened on or about the 21st day of August 2006; number 2, that it was in Wood County; number 3, that it was the defendant, Richard Solether; number 4, he engaged in sexual conduct with another; and fifth, that the defendant purposely compelled the other person to submit by force or threat of force."
 {¶ 80} "The court next instructed on "purposely" as defined under R.C. 2901.22:
 {¶ 81} "Purposely means a person acts purposely when it is his specific intention to cause a certain result or when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature."
 {¶ 82} Appellant now argues that because neither the indictment nor the jury instructions stated that appellant had to purposely compel the victim to submit and to purposely engage in sexual conduct, the jury treated the sexual conduct element as a strict liability offense.
 {¶ 83} R.C. 2901.22(A) provides that in order to be convicted of a criminal offense the following must apply:
 {¶ 84} "(1) The person's liability is based on conduct that includes either a voluntary act, or an omission to perform an act or duty that the person is capable of performing; *Page 25 
 {¶ 85} "(2) The person has the requisite degree of culpability for each element as to which a culpable mental state is specified by the section defining the offense."
 {¶ 86} Typically, "where the General Assembly indicates a mental state in one part of a statute, and does not indicate any mental state in another part of that statute, that indicates an intent to impose strict liability in that other part." State v. Lozier, 101 Ohio St.3d 161,2004-Ohio-732, ¶ 26, citing State v. Maxwell, 95 Ohio St.3d 254,2002-Ohio-2121, ¶ 27-29.
 {¶ 87} In Lozier, the Supreme Court of Ohio analyzed whether the trafficking in LSD statute imposed strict liability where the offense was committed "in the vicinity of a school." The court concluded that the reckless mental state applied. The court noted that "`a crime may have different degrees of mental culpability for different elements.'" Id. at ¶ 40, quoting Maxwell at ¶ 30. In reaching its decision, the court also relied upon its decision in State v. Wac (1981),68 Ohio St.2d 84. In Wac, the court analyzed the mental state in R.C. 2915.02(A)(1) which provides that "[n]o person shall do any of the following: (1) Engage in bookmaking, or knowingly engage in conduct that facilitates bookmaking."
 {¶ 88} The Wac court concluded that the intent of the first phrase was to impose strict liability. Id. at 86.
 {¶ 89} With regard to rape under R.C. 2907.02(A)(2), appellant has cited no cases that hold that the mens rea for the sexual conduct element must be separately delineated *Page 26 
in the indictment. The state, supporting its strict liability argument relies on State v. Haywood (June 7, 2001), 8th Dist. No. 78276. InHaywood, the defendant was convicted of R.C. 2907.02(A)(1)(b), rape of a child under 13. The court noted that there was no mens rea as to the sexual conduct element. Regarding the age element the court noted: "Rape of a child under thirteen has been described as a strict liability offense, and the act itself, engaging in sexual conduct, does not require a mental element."
 {¶ 90} Looking at the statute, while we agree with the state's general premise that different sections of a statute may have different mental states, we find that we do not need to extend that reasoning to the charge of rape under R.C. 2907.02(A)(2). Unlike Wac, supra, the section at issue is not divided into two separate phrases with two separate mental states. Rather, the result is much simpler in that we read purposely as applying to both the conduct and the result. In other words, use of the word "when" conditions the purpose of having sexual conduct with the purposeful use of use of or threat of force. Although appellant makes the identical argument, he insists that the indictment required "clarifying" language. We disagree. In our view, the statute clearly indicates that a defendant is guilty of rape where he purposely compels the victim to submit to sexual conduct, not some other unknown act.
 {¶ 91} Alternatively, assuming our grammatical interpretation of the statute is flawed and the indictment is defective, we will address the applicability of Colon I. First, we reject appellant's argument that the error is structural in nature. As stated above, *Page 27 Colon II expressly limited Colon Is application to "the facts in that case." Colon II, at ¶ 8. The facts in Colon I differ from this case by the simple fact that Colon I addressed a robbery charge and a recklessness mens rea. Thus, we decline to extend Colon I to this case.
 {¶ 92} Applying a plain error standard of review we note that an alleged error does not constitute plain error pursuant to Crim. R. 52(B) "* * * unless, but for the error, the outcome of the trial clearly would have been otherwise." State v. Long (1978), 53 Ohio St.2d 91, paragraph two of the syllabus.
 {¶ 93} Upon review, we cannot say that but for the alleged error the outcome of the trial would have been different. We further note that, as to the ineffective assistance of counsel claim, appellant has failed to demonstrate that but for the alleged errors of counsel a reasonable probability existed that the result of the trial would have been different. See Strickland v. Washington (1984), 466 U.S. 668, 693, 104 S.Ct. 2052, 80 L.Ed.2d 674.
 {¶ 94} As stressed by appellant, the credibility of the testimony of appellant and the victim was a significant issue at trial. The focus of their testimony was whether the sexual encounter was consensual. If the jury chose to believe the victim, then she was forced to submit to the sexual conduct. If the jury chose to believe appellant, then the sexual conduct was consensual. Accordingly, we find that appellant's sixth assignment of error is not well-taken. *Page 28 
 {¶ 95} On consideration whereof, we find that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Wood County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Wood County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
[1] Initially, appellant raised five assignments of error. On May 28, 2008, this court granted appellant's motion for leave to raise an additional assignment of error relating to the intent element in the indictment. *Page 1