[Cite as *State v. Saldivar*, 2022-Ohio-144.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                                    Court of Appeals No.  L-21-1056

    Appellee                                                    Trial Court No.  CR0201903071

v.

Vincent Saldivar                                            **DECISION AND JUDGMENT**

    Appellant                                                    Decided:  January 21, 2022

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Evy M. Jarrett, Assistant Prosecuting Attorney, for appellee.

Brian C. Morrissey, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Defendant-appellant, Vincent Saldivar, appeals the March 11, 2021

judgment of the Lucas County Court of Common Pleas which, following a jury trial

convicting him of three counts of rape and one count of unlawful sexual conduct with a

minor, sentenced him to an indefinite term of 25 to 28.5 years of imprisonment.  Because

we find no error, we affirm.

## I. Facts and Procedural Background

{¶ 2} Appellant was indicted on November 27, 2019, on three counts of rape, first degree felonies, and three counts of unlawful sexual conduct with a minor.[1] The indictment alleged that the acts occurred between July 24, and September 30, 2019, in Lucas County, Ohio, and involved a minor between the ages of 13 and 16.

{¶ 3} On September 18, 2020, appellant filed a request for a *Daubert* hearing on the admissibility of the testimony of the state's proffered expert, Susan Long, Ph.D. Appellant indicated that he believed that the testimony was irrelevant as the alleged victim did not delay reporting the incident thus, such testimony would not aid the jury. Further, as to partial disclosure, appellant claimed that Dr. Long did not have the opportunity to interview the alleged victim and, thus, her psychological reasons could not be evaluated.

{¶ 4} A hearing was held on September 25, 2020, and, after receiving Dr. Long's curriculum vitae and trial statement, appellant's counsel orally argued that she was not qualified to testify as an expert in delayed disclosure or partial disclosure as she had neither conducted research in the area nor published any peer-reviewed articles. The state asserted that Dr. Long's years of clinical experience where she interviewed and

---

[1] The state ultimately entered a nolle prosequi as to two of the unlawful sexual conduct with a minor counts.

counseled sexual abuse victims of the relevant age group would aid the jury in understanding the phenomenon of delayed or partial disclosure.

{¶ 5} Dr. Long then testified that she is the clinical director of the counselor education program at The University of Toledo; previously, she counseled approximately 50 three to 18 year-old victims of sexual abuse. Dr. Long testified that based on her training and experience, she has an understanding of the effects of family member or authority figure sexual abuse on the psyche of a minor. Dr. Long stated that a delayed disclosure encompasses anywhere from two weeks to years following the incident(s).

{¶ 6} Dr. Long admitted that she has not conducted research, presented a lecture, or published any articles regarding delayed or partial disclosure. Dr. Long further admitted that it was the first time she was testifying as an expert. The trial court concluded that Dr. Long possessed "the necessary training, knowledge and experience to testify at trial" and noted that any objections to the substance of her testimony would be reserved for trial.

{¶ 7} On September 28, 2020, the matter proceeded to a jury trial; a summary of the evidence presented is as follows. Victim, G.G., testified that she is 15 and currently lives in Sylvania, Ohio, with her mom and brother. G.G. stated that she has known appellant since she was nine and that he was like a "father figure" to her. Appellant would attend family events, would buy her things and take her places, and G.G's mother would sometimes enlist his help in enforcing discipline. When G.G. was 11, she and her

3.

family moved out of Ohio and lived in multiple states; they stayed with appellant when visiting Ohio. Appellant did not visit them when they lived out-of-state.

{¶ 8} Relating to the four dates, and corresponding charges, G.G. testified that in July 2019, she and appellant were alone in the house and appellant inserted his fingers into her vagina and she performed fellatio. G.G. stated that appellant called her later and told her not to tell anyone because he could get in trouble. G.G. testified that this scared her because she "looked up to him so much and he was like a father figure and [she] didn't want him getting in trouble."

{¶ 9} G.G. next testified that in early August 2019, she was working at a restaurant in Sylvania, where her mother also worked, and was sitting out in her mother's car when appellant came up and gave her a hug. He asked to take her to lunch but instead he took her to the Sylvania police parking lot which, G.G. stated, she initially thought was just the Ace Hardware store lot. G.G. stated that appellant had her perform fellatio on him and that he ejaculated. G.G. stated that appellant then drove her to a house near Northview High School where she again performed fellatio. Appellant then returned her to the restaurant. G.G. stated that the incident made her feel "disgusting" and that she did not want it to happen.

{¶ 10} Also in August 2019, on G.G.'s 14th birthday, they were at her house when appellant told her brother, E.G. that they were going to the carry out. E.G. stated that he wanted to come along. After they returned from Sylvan Pantry, appellant told E.G. that

4.

he wanted to talk with G.G. alone. He then drove G.G. to the Sylvan Elementary School parking lot where she performed fellatio. Appellant inserted his fingers into her vagina and touched her breasts. G.G. stated that the incident made her feel disgusting.

{¶ 11} Finally, in September 2019, appellant, G.G., and her mother and brother were at G.G.'s house and they were watching the movie *John Wick* in her mother's bedroom. G.G. stated that eventually she went to bed and to sleep and that appellant woke her up by kissing her neck. G.G. again performed fellatio on him. She stated that she did not want to do it and that she was crying but she believed that he would not let her stop. Appellant then performed oral sex on her.

{¶ 12} G.G.'s younger brother, E.G., testified that he lives on Brint Road[2] with his sister and mother. E.G. testified that appellant was a "father figure" to him for approximately eight to nine years. E.G. stated that at some point he noticed that appellant was trying to spend more time alone with G.G. Specifically, appellant asked how long E.G. would be at football practice and when his mother would be getting home. On the night of G.G.'s birthday E.G., appellant, and G.G. went to the Sylvan Pantry carryout. E.G. stated that appellant took him home and then he and G.G. went for a drive. Further, on the night the family was watching the movie *John Wick* in his mother's bedroom, E.G. observed his sister leave to go to bed and, shortly thereafter, appellant left. E.G. acknowledged that he did not know whether appellant actually left the house or just left

---

[2] E.G. specified the street address.

the bedroom. E.G. testified that around the time of these events, G.G. was acting out and being rebellious and had been suspended from school.

{¶ 13} Church volunteer, N.B., testified that she was a group leader for eighth grade girls. The ministries director indicated that G.G. had spoken with him and that he wanted N.B. to speak to her because she was a sexual abuse survivor. After speaking with G.G., N.B. met with G.G. and her mother to discuss what G.G. had revealed to her.

{¶ 14} Sylvania Police Detective Matthew Collins testified that he was assigned to investigate the case. Detective Collins spoke with G.G. and got her version of the events. Detective Collins testified regarding some text messages between appellant and G.G. which confirmed that the two were together on the relevant dates. The media analysis reports were admitted into evidence.

{¶ 15} As to the August 14, 2019 incident in the Sylvania Police parking lot, Detective Collins testified regarding the surveillance videos that were admitted into evidence. He testified that a vehicle matching the make, model, and color of appellant's pulled into the lot at the time testified to by G.G. After approximately 20 minutes, the vehicle left the lot.

{¶ 16} Collins testified that he interviewed G.G. on October 15, and September 18, 2019. Evidence from G.G.'s bedroom was collected on October 16, 2019, and sent to the BCI for forensic analysis. The results were insufficient to identify semen or other

6.

bodily fluids. Collins also conducted interviews of G.G.'s brother, her mother, the church counselor, N.B., and G.G.'s school guidance counselor.

{¶ 17} Over renewed objection, the state's expert in child and adolescent trauma as a result of sexual abuse, clinical counselor Dr. Susan Long, testified regarding the "common phenomenon" of delayed disclosure. Long indicated that approximately 86 per cent of sexual assaults are not reported for weeks to years following the incident. Dr. Long stated that partial disclosure is also common and is a self-protection strategy often used to gauge if the listener is likely to believe and support the victim. Further, regarding parents, caregivers or other authority figures, there is a fear that disclosure will result in the loss of that person in the victim's life.

{¶ 18} At the close of the state's evidence, appellant made a Crim.R. 29 motion for acquittal. Appellant argued that the state failed to establish that under the force, or threat of force element for rape, appellant was an authority figure. Further, under unlawful sexual contact with a minor, that appellant and G.G. were not married. Finally, as to venue, appellant contended that no evidence was presented to establish that the crimes charged took place in Lucas County, Ohio.

{¶ 19} The court ultimately rejected the force, threat of force argument and the "not the spouse" argument finding that there was ample testimony that appellant was a father figure and that G.G. was forced to engage in sexual activity and that marriage between the two was a legal impossibility.

7.

{¶ 20} After taking a recess and conducting independent research the court concluded that the testimony surrounding the events in August 2019, in the Sylvania municipal parking lot and in the vicinity of Northview High School and Sylvan Elementary, was sufficient to establish venue. As to the July 24 and September 10, 2019 events which were alleged to occur at G.G.'s home, the court agreed that while evidence was presented that Detective Collins, a Sylvania Police detective, did gather evidence at G.G.'s home, there was no nexus established between the home and the events. The court, citing R.C. 2945.10 and Ohio case law, then determined that the state could reopen its case if a witness could clarify earlier testimony and establish venue. Appellant's counsel objected to the presentation of additional evidence after the close of the state's case.

{¶ 21} The state then re-called Detective Collins who testified as to G.G.'s home address, where the July and September 2019 incidents were alleged to have taken place, and the fact that it was located in Sylvania, Lucas County, Ohio. Detective Collins further clarified that the parking lot G.G. had stated she was driven to by appellant was located in Sylvania, Lucas County, Ohio, as well as Sylvan Elementary.

{¶ 22} Appellant renewed his Crim.R. 29 motion which was denied. Following jury deliberations, appellant was found guilty of the rape and unlawful sexual conduct with a minor counts. Following appellant's March 11, 2021 sentencing, appellant commenced this appeal and now raises three assignments of error for our review:

8.

## II. Assignments of Error

I.  After the essential fact of venue was not proven in its case in chief, the trial court erred when it allowed the State of Ohio to re-open its case to establish venue and add new facts.

II.  When the State of Ohio rested, it did not prove that the victim was not the spouse of the offender, which is an element of the offense.  In spite of that, the trial court denied Saldivar's Rule 29 Motion for Acquittal.

III.  Expert testimony was elicited by the State of Ohio even though the testimony was not beyond the average knowledge of a jury and the expert had not based her opinions on scientifically reliable principles.  The trial court erred in allowing this expert to testify.

## III. Discussion

### A. Crim.R. 29/Sufficiency of the Evidence

{¶ 23} Appellant's first and second assignments of error contend that the trial court should have granted his Crim.R. 29 motion for acquittal because his convictions were not supported by evidence sufficient to establish each element of the crimes of rape and unlawful sexual conduct with a minor.

{¶ 24} Crim.R. 29(A) provides for an entry of a judgment of acquittal if the evidence is insufficient to sustain a conviction. "An appellate court reviews a denial of a Crim.R. 29 motion for acquittal using the same standard that is used to review a

9.

sufficiency of the evidence claim." *State v. Reyes*, 6th Dist. Wood No. WD-03-059, 2005-Ohio-2100, ¶ 21, citing *State v. Carter*, 72 Ohio St.3d 545, 553, 651 N.E.2d 965 (1995). The Supreme Court of Ohio has stated that the term "sufficiency of the evidence" presents a question of law as to whether the evidence is legally adequate to support a jury verdict as to all elements of the crime. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). In reviewing a sufficiency of the evidence claim, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 25} In appellant's first assignment of error, he argues that the state failed to prove that the offenses were committed in Lucas County, Ohio, and that the court erred in allowing the state to reopen its case to establish venue. Crim.R. 18 provides that "[t]he venue of a criminal case shall be as provided by law." Codifying Article I, Section 10 of the Ohio Constitution, R.C. 2901.12(A) states: "The trial of a criminal case in this state shall be held in a court having jurisdiction of the subject matter, and * * * in the territory of which the offense or any element of the offense was committed."

{¶ 26} Though not a material element of a crime, venue must be proven beyond a reasonable doubt. *State v. Smith*, 87 Ohio St.3d 424, 435, 721 N.E.2d 93 (2000), citing *State v. Headley*, 6 Ohio St.3d 475, 477, 453 N.E.2d 716 (1983). It is "not essential that

10.

the venue of the crime be proven in express terms, provided it be established by all the facts and circumstances in the case, beyond a reasonable doubt, that the crime was committed in the county and state as alleged in the indictment." *State v. Hampton*, 134 Ohio St.3d 447, 2012-Ohio-5688, 983 N.E.2d 324, ¶ 19, quoting *State v. Dickerson*, 77 Ohio St. 34, 82 N.E. 969 (1907), paragraph one of the syllabus. *See State v. Thacker*, 4th Dist. Lawrence No. 18CA21, 2020-Ohio-4620, ¶ 36, citing *Dickerson*, at paragraph one of the syllabus, and *State v. Wood*, 2d Dist. Clark No. 2016-CA-69, 2018-Ohio-875, ¶ 23. "[T]he court has broad discretion to determine the facts which would establish venue." *Toledo v. Loggins*, 6th Dist. Lucas No. L-06-1355, 2007-Ohio-5887, ¶ 17, citing *Toledo v. Taberner*, 61 Ohio App.3d 791, 793, 573 N.E.2d 1173 (6th Dist.1989).

{¶ 27} Courts have concluded that sufficient evidence of venue was established in instances where no direct testimony was presented that the crime was committed within a particular county. *See Loggins*, *supra*; *State v. Smallwood*, 9th Dist. Summit No. 24282, 2009-Ohio-1987; *State v. Brown*, 7th Dist. Mahoning No. 03-MA-32, 2005-Ohio-2939.

{¶ 28} As set forth above, the testimony presented at trial focused on four separate incidents. It would be reasonable for the court to have concluded, reviewing the evidence in a light favorable to the prosecution, that the state had presented sufficient evidence of venue. The incident at the Sylvania municipal parking lot, which was testified to by G.G. and a video narrated by Detective Collins, was clearly in Sylvania, Ohio. Further, there

11.

was sufficient evidence that the incident on G.G.'s birthday, at the Sylvan Elementary parking lot, took place in Sylvania, Ohio.

{¶ 29} Arguably less certain are the incidents which took place at G.G.'s home in July and September 2019. At trial, G.G. testified that she currently lived in Sylvania, Ohio. G.G.'s brother also testified that he currently lived at a specific address in Sylvania, Ohio, and attended a Sylvania junior high school. Detective Collins, a Sylvania Police officer, testified that he was assigned to investigate the case. He stated that on October 16, 2019, he retrieved various items from G.G.'s home in relation to the September 2019 incident. It could be inferred that a Sylvania Police officer was investigating events that took place in Sylvania, Ohio.

{¶ 30} Regardless, the trial court did not err when it allowed the state to reopen its case to present specific evidence of venue. We have noted that such decision "is within the sound discretion of the trial court, * * * and will not be disturbed on appeal unless under the circumstances it amounted to an abuse of discretion." *Holland v. Warnock*, 6th Dist. Lucas No. L-97-1066, 1998 WL 114358 (Mar. 6, 1998). In *Warnock*, a driving under the influence case, we determined that the court's decision, after the state and defense had rested and defendant had moved for acquittal, to allow the state to present additional evidence of a police sergeant to "clarify" his earlier testimony, was not an abuse of discretion. The officer testified regarding the defendant's specific breathalyzer results. *Id.* at *2. *See State v. Pertee*, 9th Dist. Wayne No. 95CA0033, 1995 WL

12.

688800, *3 (Nov. 22, 1995) (affirming the allowance of the state to reopen its case to present dates of co-habitation in domestic violence trial, the court noted that "juries, whenever possible, should be provided all available relevant evidence.").

{¶ 31} Based on the foregoing, we conclude that the additional testimony simply acted to clarify the evidence already presented by Detective Collins; he did not testify to any new evidence. *Warnock*, *supra*. Further, appellant was given the opportunity to cross-examine the additional testimony. Thus the court did not err in allowing the state to reopen its case and venue was established by sufficient evidence. Appellant's first assignment of error is not well-taken.

{¶ 32} Appellant's second assignment of error asserts that the state failed to prove that the victim was not the appellant's spouse, an element of the offense of rape under R.C. 2907.02(A)(1). The state counters that while appellant's conviction for unlawful sexual conduct with a minor did require a showing that appellant was not the victim's spouse, appellant was charged with rape under R.C. 2907.02(A)(2), which does not contain the "not the spouse" element. Unlawful sexual conduct with a minor, R.C. 2907.04(A) and (B)(3), provides:

> (A) No person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard.

13.

(B) Whoever violates this section is guilty of unlawful sexual conduct with a minor.

\* \* \*

(3) Except as otherwise provided in division (B)(4) of this section, if the offender is ten or more years older than the other person, unlawful sexual conduct with a minor is a felony of the third degree.

{¶ 33} As to the "not the spouse of the offender" element, appellant concedes that the trial court correctly noted that G.G. was not of marriageable age in the state of Ohio, *see* R.C. 3101.01 and 3101.02, but suggests that because she lived in several other states it was not an impossibility. The testimony at trial showed that when G.G. and her family lived out-of-state, appellant did not visit them. The jury could have reasonably deduced that G.G. was not appellant's spouse.

{¶ 34} As to the rape convictions, R.C. 2907.02 relevantly provides:

(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:

(a) For the purpose of preventing resistance, the offender substantially impairs the other person's judgment or control by

administering any drug, intoxicant, or controlled substance to the other person surreptitiously or by force, threat of force, or deception.

(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

(c) The other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age.

(2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.

{¶ 35} As set forth above, appellant's "not the spouse of the offender" argument is not applicable to the rape charges as appellant was charged under R.C. 2907.02(A)(2). Appellant responded to this argument in his appellate reply brief by additionally arguing that the "force or threat of force" element was not met. Although this argument was not initially raised, upon review it must be rejected.

{¶ 36} Appellant acknowledges that the force required under the statute is not necessarily physical and may be psychological under certain circumstances. *See State v. Eskridge*, 38 Ohio St.3d 56, 526 N.E.2d 304 (1988). This is particularly true in cases

15.

where an adult has authority over a child such as a parent, teacher, coach, caregiver, or close family friend. *See also State v. Dye*, 82 Ohio St.3d 323, 695 N.E.2d 763 (1998) (nine-year old victim and close family friend); *State v. Milam*, 8th Dist. Cuyahoga No. 86268, 2006-Ohio-4742 (13-year old victim and friend's father.). In such cases, a determination as to whether the force element has been met requires an examination of the age and mental health of the victim, the relationship between the parties, and all other relevant circumstances. *Milam* at ¶ 15.

{¶ 37} At trial, evidence was presented that appellant had known the family for several years and attended birthday parties and other family gatherings. This relationship enabled his access to G.G. Appellant was perceived by G.G. and her brother as a father figure and she testified that he had the ability to enforce discipline. G.G. specifically stated that she felt that she was not able to refuse appellant's advances, she was disgusted by the unwelcome encounters, she was fearful of appellant's response if she said anything, and she feared that she and appellant would get in trouble.

{¶ 38} Based on the foregoing, we find that the state provided sufficient evidence as to the crimes of unlawful sexual conduct with a minor and rape. Accordingly, the trial court did not err in denying appellant's Crim.R. 29 motion for acquittal. Appellant's second assignment of error is not well-taken.

16.

## B. Admission of Expert Testimony

{¶ 39} In his third assignment of error, appellant contends that the trial testimony presented by clinical psychologist, expert witness Dr. Susan Long was improper because she was not properly qualified as an expert and the subject of her testimony did not aid the jury in its fact-finding role.

{¶ 40} The decision to certify a witness as an expert is a matter left to the discretion of the trial court, and we review for an abuse of that discretion. *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 114. Generally, "[c]ourts should favor the admissibility of expert testimony whenever it is relevant and the criteria of Evid.R. 702 are met." *State v. Nemeth*, 82 Ohio St.3d 202, 207, 694 N.E.2d 1332 (1998).

{¶ 41} Evid.R. 702 provides:

A witness may testify as an expert if all of the following apply:

(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

17.

(C) The witness' testimony is based on reliable scientific, technical or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all the following apply:

(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts or principles;

(2) The design of the procedure, test, or experiment reliably implements the theory;

(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.

{¶ 42} In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the United States Supreme Court held that the trial court must act as a "gatekeeper" to ensure both the relevance and reliability of expert scientific testimony before admitting it. In order to aid in determining the threshold reliability of such testimony, *Daubert* identified several factors for federal district courts to consider in addressing the issue. These factors, along with *Daubert's* approach to the reliability issue, were later adopted by the Ohio Supreme Court in *Miller v. Bike Athletic Co.*, 80 Ohio St.3d 607, 687 N.E.2d 735 (1998) and include: "(1) whether the theory or technique has been tested, (2) whether it has been subjected to peer review, (3) whether there is a

18.

known or potential rate of error, and (4) whether the methodology has gained general acceptance." *Id.* at 611, citing *Daubert* at 593-594.

{¶ 43} Relevant here, appellant argues that the testimony presented was not based on Dr. Long's quantitative research; in other words, Long had never conducted research in the area of delayed or partial disclosure. Further, appellant argues that the idea that many sexual abuse victims delay reporting the abuse, is within the knowledge of the average juror based upon popular media.

{¶ 44} As set forth above, at the September 25, 2020 *Daubert* hearing Dr. Long testified that she trains students in a clinical, mental health counseling setting and that for eight years she directly treated minor sexual abuse victims. At trial, Dr. Long similarly testified that her clinical experience included counseling children and adolescents who had been victimized by sexual abuse. Long further stated that she has taught graduate mental health counseling students on the topic.

{¶ 45} Based on the foregoing, we find that the trial court did not abuse its discretion in allowing the testimony of Dr. Long. Long's testimony was admissible as "other specialized information," Evid.R. 702(C), she had gained through her clinical experience. Further, this court had previously affirmed the admission of expert testimony on delayed or partial reporting of child sexual abuse. *State v. McGlown* 6th Dist. Lucas No. L-07-1163, 2009-Ohio-2160, ¶ 39-40, citing *State v. Frost*, 6th Dist. Lucas Nos. L-06-1142, L-06-1143, 2007-Ohio-3469, *State v. Solether*, 6th Dist. Wood No. WD-07-053,

19.

2008-Ohio-4738. Finally, although the general public may be aware of the delayed reporting phenomenon, it does not follow that they are educated as to its psychological underpinnings. Appellant's third assignment of error is not well-taken.

## IV. Conclusion

{¶ 46} Based on the foregoing, we affirm the March 11, 2021 judgment of the Lucas County Court of Common Pleas. Pursuant to App.R. 24, we order appellant to pay the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

Thomas J. Osowik, J.

Myron C. Duhart, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.